[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION MOTION TO SET ASIDE VERDICT
The plaintiffs, Michael Joseloff and Joanne Kaufman, have brought this action against the defendants, Vincent Anza and Dorita Anza, in two counts. The first count alleges that on or about August 1996, the defendants entered the plaintiffs' property and willfully cut, destroyed and/or carried away approximately 40 trees, timber and/or shrubbery from the plaintiffs' property without license. It is further alleged that the defendants' actions constituted a violation of C.G.S. § 52-560, and that the plaintiffs have been damaged in that they were deprived of the use and enjoyment of the trees and have suffered a diminution of the value of their property.
The second count alleges a trespass upon the plaintiffs' property, also causing interference with the plaintiffs' use and enjoyment and a diminution of their property value.
The parties were abutting land owners on Hermann Lane in Easton and the defendant Vincent Anza admitted that he entered plaintiffs' property and cut said timber without the license of the plaintiffs but denied the such was done willfully. The action against Dorita Anza was withdrawn.
After a trial of approximately one week during which the jury announced that it was unable to agree, requiring the court to read to it the classic portions of State v. Smith, 49 Conn. 376, the jury rendered a verdict in the amount of $10,000. The plaintiffs had the burden of proving by a fair preponderance of the evidence that they suffered a diminution of the value of their property and that there was a violation of C.G.S. § 52-560. As to C.G.S. § 52-560, it is provided that without "license of the owner", the cutting defendant is liable for three times the reasonable value of the severed trees. The "reasonable value" has been held to mean the market value of the trees for timber or fuel.Maldonado v. Conn. Light Power Co., 31 Conn. Sup. 536, 538. However, for injury resulting to the land from the destruction of the trees, the rule is the reduction in the value of the property. 31 Conn. Sup. 536,538, supra.
There was no evidence as to the value of the severed trees for timber or fuel. The plaintiffs are left, therefore, to the burden of proving a diminution in the value of their property due to the cutting of the trees. CT Page 11180
The defendants have filed a motion for remittitur and for a directed verdict based on the claim that the plaintiffs failed to introduce sufficient, credible evidence for the jury to find any reduction in the fair market value of their property. This is not like the case of personal injury in which a number of intangibles, such as, pain, suffering, permanency make up the ultimate verdict. The evidence produced by the plaintiffs fell short of proof by a fair preponderance of the evidence.
The plaintiff, Michael Joseloff, testified that after looking at books, papers, magazines and talking to the neighbors, he determined that the value of all his trees was $90,000. Since one third of the trees was impacted by the cutting, he arrived at a figure of $30,000 as the dimunated value of the property due to the cutting. The obvious fallacy in this reasoning is that the issue is not the value of the trees, but the reduction in the land value due to the tree cutting. 31 Conn. Sup. 536,638, supra.
Also testifying on behalf of the plaintiffs was David Fugitt, senior vice president of the firm of John D. Hastings Inc., who testified that he managed the real estate brokerage as well as running the appraisal department in the mid-lower to mid Fairfield County.
Mr. Fugitt testified that he was hired to determine whether there was any diminution in the fair market value of plaintiffs' property due to the cutting of the trees. He testified that his opinion of the value of the property prior to tree cutting was not based on an appraisal but on what he was told was the purchase price. He did not examine comparable properties and did not file a report. Nor did he appraise comparable properties or file a report after the tree cutting. Indeed, Fugitt testified that he was not asked to appraise plaintiffs' property at any time, before or after the cutting. His opinion relative to the reduction in value due to the tree cutting was based on studies of percentages trees add to property value, particularly studies done by an International Society of Agriculture and that he made a judgment call on the diminution as being 5% of $500,000, which he claimed was the fair market value of the property prior to the cutting based on his knowledge of the general real estate market in Fairfield County prior to and after the tree cutting. He did not substantiate his opinion by any appraisals as reports as to comparable sales. Actually, he testified that he was never asked to make an appraisal, before or after. He did not produce his book on plant appraisal and was not sure whether the International Society of Agriculture book was sanctioned by the National Association of Real Estate appraisers or whether the author of his book had knowledge of real estate appraisals. CT Page 11181
The court cannot find that Fugitt was entitled to any credibility on the real issue in the case i.e. the reduction in the plaintiffs' property due to the defendants' tree cutting. Certainly, there was nothing in the testimony upon which a jury verdict of $10,000 might be based. The court suspects that after having announced several times that the jury was hopelessly deadlocked and having heard the court twice give it the classic instructions in the "Chip" Smith case, 49 Conn. 376, the jury arrived at a figure to placate those jurors who were holding out for a high plaintiff's verdict and those voting for a defendant's verdict, by arriving at a minimal amount of damages.
The verdict is ordered set aside and a new trial ordered.
Belinkie, Judge Referee